UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JON THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-CV-0271-CVE-FHM |
| | ) | |
| THE BAMA COMPANIES, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

Now before the Court is plaintiff's motion to remand (Dkt. # 15).

I.

Plaintiff filed his original petition in the District Court in and for Tulsa County on April 25, 2005, alleging that defendant failed to comply with the terms of an employment agreement ("the Employment Agreement") entered into by plaintiff and defendant in 2001.  That petition lists three causes of action against defendant: (1) breach of the Employment Agreement; (2) breach of the covenant of good faith and fair dealing and/or wrongful discharge in violation of public policy; and (3) breach of an agreement to provide plaintiff with stock of the defendant corporation through a phantom stock plan.  On May 18, 2005, defendant timely removed on the ground that the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001- 1461, completely preempts plaintiff's third claim.  Notice of Removal (Dkt. # 2-1).

On June 6, 2005, plaintiff filed an amended complaint, which contained two changes to his original petition: (1) an amendment to the relief sought under his first cause of action -- plaintiff now seeks "Additional compensation as set forth in the employment contract,"  Plaintiff's Amended

Complaint (Dkt. # 13), at 3, rather than unpaid benefits promised under plaintiff's profit sharing account, 401k plan, and Medical Flex Plan; and (2) the omission of plaintiff's third cause of action upon which defendant based its removal. Almost immediately after filing his amended complaint, plaintiff filed a motion to remand his two remaining claims to state court.

## II.

The rules governing removal to federal court are well-established, requiring that parties who seek to be heard in a federal forum demonstrate either the presence of a federal question or complete diversity of parties. <u>See</u> 28 U.S.C. § 1441.[1]  As the party advocating the propriety of removal, defendant bears the burden of establishing the presence of a federal question. <u>See</u>, <u>e.g.</u>, <u>Montoya v. Chao</u>, 296 F.3d 952, 955 (10th Cir. 2002).  Although neither plaintiff's original petition nor his amended complaint contains any reference to federal law, defendant argues that ERISA completely preempts plaintiff's state law claims for relief, thereby providing a basis for removal.

## A.

In view of the Tenth Circuit's caution that "any court forced to enter the ERISA preemption thicket sets out on a treacherous path," <u>David P. Coldesina, D.D.S., P.C., Employee Profit Sharing Plan & Trust v. Estate of Simper</u>, 407 F.3d 1126, 1135 (10th Cir. 2005), a review of the doctrinal regime governing ERISA preemption as it relates to removal is an appropriate starting point.

The well-pleaded complaint rule guides the determination of whether a plaintiff's complaint raises a federal question for the purposes of removal.  That rule dictates that federal jurisdiction exists "only when a federal question is presented on the face of plaintiff's well-pleaded complaint." <u>Felix v. Lucent Tech., Inc.</u>, 387 F.3d 1146, 1154 (10th Cir. 2004).  Federal preemption is typically

---

[1]  Diversity jurisdiction is not an issue; both parties are citizens of the state of Oklahoma.

raised as a defense to the allegations in a plaintiff's complaint, <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 392 (1987), and ordinarily is not a sufficient ground for removal. <u>Felix</u>, 387 F.3d at 1154 ("[A] federal defense, even one relying on the preclusive effect of a federal statute, is not enough to authorize removal to federal court."). There is, however, a recognized "independent corollary," <u>id.</u>, to the well-pleaded complaint rule: the complete preemption doctrine. In recognizing this doctrine, courts have acknowledged that, in certain circumstances, a federal statute may carry preemptive force so extraordinary that it will convert a state claim into a federal claim for purposes of removal and the well-pleaded complaint rule. <u>Id.</u> at 1156. ERISA is one such federal statute. <u>AETNA Health Inc. v. Davila</u>, 542 U.S. 200, 208 (2004).

ERISA's preemptive power is not without limits, and courts have taken particular care to outline the boundaries of ERISA preemption, identifying two forms of ERISA preemption: conflict preemption and complete preemption. ERISA may preempt a state claim because it "relates to" an ERISA plan under 29 U.S.C. § 1144. In that case, so-called conflict preemption[2] constitutes a defense to a state law claim related to an ERISA plan, but is not a basis for removal. <u>See Sonoco Products Co. v. Physicians Health Plan, Inc.</u>, 338 F.3d 366, 371 (4th Cir. 2003) ("[C]onflict preemption [under section 1144] does *not* provide a basis for federal jurisdiction. Rather, it provides a defense to a state law claim that may be asserted in state court.") (emphasis in original). If a state law claim is "related to" an ERISA plan under section 1144 and also falls within the scope of ERISA's civil enforcement provisions, contained in 29 U.S.C. § 1132, the state claim is said to be

---

[2]     Courts have utilized different terms to identify the form of preemption provided under section 1144. <u>Compare</u> <u>Prudential Ins. Co. of America v. National Park Med. Ctr.</u>, 413 F.3d 897, 907 (8th Cir. 2005)("express preemption") <u>with</u> <u>Cotton v. Massachusetts Mut. Life Ins. Co.</u>, 402 F.3d 1267, 1292 (11th Cir. 2005) ("defensive preemption") <u>and</u> <u>Giles v. NYLCare Health Plans, Inc.</u>, 172 F.3d 332, 337 (5th Cir. 1999) ("ordinary preemption").

completely preempted and subject to removal.  Felix, 387 F.3d at 1157.  Since Congress intended

the enforcement mechanism contained in section 1132 to be the sole method of recovery for denial

of benefits guaranteed under an ERISA plan, Davila, 542 U.S. at 209, state law claims that duplicate,

supplement, or supplant the ERISA civil enforcement remedy conflict "with the clear congressional

intent to make the ERISA remedy exclusive."  Id.  The basis for removal when ERISA completely

preempts a state claim is "the creation of federal law to replace state law."  Bartholet v. Reishauer

A.G. (Zurich), 953 F.2d 1073, 1075 (7th Cir. 1992).

Although the parties' briefing in this matter either conflates the two forms of preemption or

fails to acknowledge either, the distinction is critical, since defendant's removal to this Court was

appropriate only if ERISA completely preempted one of plaintiff's state law claims, thereby

transforming it into a claim under federal law.

**B.**

The Court looks to the time of removal and plaintiff's original petition to determine if ERISA

completely preempted any of the state law claims contained therein.  See Grabow v.

Pricewaterhousecoopers LLP, 313 F. Supp. 2d 1152, 1155 n.1 (N.D. Okla. 2004) ( "[T]he Court

4

must determine subject matter jurisdiction at the time of removal.").[3]  Defendant based removal of this matter on the third cause of action contained in plaintiff's original petition, seeking benefits under a phantom stock plan, arguing that ERISA completely preempted plaintiff's breach of contract claim for benefits from that plan.

In <u>Davila</u>, the Supreme Court explained the requirements of complete preemption: "[I]f an individual, at some point in time, could have brought his claim under ERISA [§ 1132], and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA [§ 1132]."  542 U.S. at 210.  At issue in this case is the availability of a remedy under section 29 U.S.C. 1132(a).

---

[3]   Plaintiff is incorrect in suggesting that the amendment of his complaint divested this Court of subject matter jurisdiction.  <u>See</u> <u>Pfeiffer v. Hartford Fire Ins. Co.</u>, 929 F.3d 1484, 1488 (10th Cir. 1991)(rejecting the assumption "that a party may force remand of an action after its removal from state court by amending the complaint to destroy the federal court's jurisdiction over the action" and noting that the propriety of removal is judged on the complaint as it stands at the time of removal").   Other courts have expressly rejected plaintiff's claim that, "[t]he rule that a federal court would determine the nature of the plaintiff's claims as it stood at the time the petition for removal was filed has been changed by [amendments to] § 1447(c)."  Plaintiff's Reply to Defendant's Response and Objection to Plaintiff's Motion to Remand with Brief in Support (Dkt. # 28), at 6.  <u>See</u>, <u>e.g.</u>, <u>Poore v. American-Amicable Life Ins. Co. of Texas</u>, 218 F.3d 1287, 1290-91 (11th Cir. 2000) ("We join our sister Circuits and conclude the amendments to § 1447(c) did not alter the fact that, in this case, the district court must determine whether it had subject matter jurisdiction at the time of removal.");  <u>Baldridge v. Kentucky-Ohio Transpo., Inc.</u>, 983 F.2d 1341, 1348 n.11 (6th Cir. 1993) ("The legislative history of the Judicial Improvements Act . . . the 1988 law which changed this text, reveals no intent to direct district courts to look beyond the time of removal in deciding remand motions based on lack of jurisdiction.");   <u>Matter of Shell Oil Co.</u>, 966 F.2d 1130, 1133 (7th Cir. 1992) ("Neither the text of the revised § 1447(c) nor its legislative history implies that Congress altered the traditional view . . . that jurisdiction present at the time a suit is filed or removed is unaffected by subsequent acts . . . .").

Section 1132 provides, in pertinent part:

**(a) Persons empowered to bring a civil action**
> A civil action may be brought --
>> **(1)** by a participant or beneficiary . . .
>>> **(B)** to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; . . .

29 U.S.C. 1132(a)(1)(B).  The statute permits the commencement of a civil action for benefits under two types of employee benefits programs: "welfare benefit plans" and "pension plans."   An employee welfare benefit plan is

> any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants . . . through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . .

29 U.S.C. § 1002(1)(A). An ERISA-qualified pension plan is

> any plan, fund, or program . . . established or maintained by an employer . . .  to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program –
>> (i)     provides retirement income to employees, or
>> (ii)    results in deferral of income by employees for periods extending to the termination of covered employment or beyond,
> regardless of the method of calculating the benefit s under the plan or the method of distributing benefits under the plan.

29 U.S.C. § 1002(2)(A)(i)-(ii).

Plaintiff insists that the phantom stock plan referenced in his third cause of action does not qualify as a pension plan.[4]  Plaintiff correctly notes that those courts considering the  inclusion of phantom stock plans within the coverage of ERISA have concluded that such plans do not qualify

---

[4]     The Court sees no way the plan could qualify as a welfare benefit plan.  <u>See</u> <u>Emmenegger v. Bull Moose Tube Co.</u>, 197 F.3d 929, 932 n.6 (8th Cir. 1999) ("There is no suggestion from either the parties or the District Court that the PSP might be a welfare plan, and our research convinces us that this is not a possibility.").

as pension plans under 29 U.S.C. §1002(2)(A).  See, e.g., Emmenegger, 197 F.3d at 932-33; In re

Enron Corp. Sec., Derivative & ERISA Litig., 284 F. Supp. 2d 511, 531 n.2 (S.D. Tex. 2003); Hahn

v. Nat'l Westminster Bank, N.A., 99 F. Supp. 2d 275, 279 (E.D.N.Y. 2000).  Those courts have

concluded, generally, that phantom stock plans constitute a type of bonus program expressly

excluded from ERISA coverage by federal regulation.[5]  See In re Enron Corp., 284 F. Supp. 2d at

531 n.2  ("In contrast to a pension benefit, a bonus plan does not proffer retirement income, but

functions for another purpose, such as increased compensation for an incentive or a reward for good

work.").  Defendant has offered no information regarding the phantom stock plan in this case that

would compel a different conclusion.  The phantom stock plan referenced in plaintiff's third cause

of action is not a pension plan under ERISA, and plaintiff's third cause of action may not, therefore,

be characterized as a federal claim for jurisdictional purposes.

The Court reaches a different conclusion as to the first cause of action contained in plaintiff's

original state court petition.  There, plaintiff sought benefits under a 401k plan, a profit sharing

arrangement for the years 2004 to 2006, and a Medical Flex Plan.  At the very least, the Medical

Flex Plan appears, on its face, to be a welfare benefit plan, as defined in 29 U.S.C. § 1002(1),

established or maintained for the purpose of providing medical, surgical, or hospital care or benefits,

or benefits in the event of sickness, accident, disability, death, or unemployment for its participants.

29 U.S.C. § 1002(1)(A).  Plaintiff's breach of contract claim, in its initial iteration, was a claim for,

inter alia, benefits owed under at least one ERISA qualified plan.  Moreover, defendant's liability

---

[5]    Federal regulation provides, "For purpose of Title I of the Act and this chapter, the terms 'employee pension benefit plan' and 'pension plan' shall not include payments made by an employer to some or all of its employees as bonuses for work performed, unless such payments are systematically deferred to the termination of covered employment or beyond, so as to provide retirement income to employees." 29 C.F.R. § 2510.3-2(c).

for breach of contract "derives entirely from the particular rights and obligations established by the benefit plans." Davila, 542 U.S. at 213.

Plaintiff's first cause of action in his original state court petition "related to" an ERISA plan under 29 U.S.C. § 1144, and was cognizable under 29 U.S.C. § 1132 as a claim to recover benefits under an ERISA plan. By virtue of ERISA's complete preemptive effect, that claim was transformed into a federal claim, and removable under 28 U.S.C. § 1441. Moreover, this Court had subject matter jurisdiction over plaintiff's remaining claims under 28 U.S.C. § 1367(a) (providing supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United State Constitution").

### III.

Plaintiff has, however, amended his complaint, eliminating his third cause of action and any references to those ERISA plans which provided grounds for a claim under 29 U.S.C. § 1132(a) and a basis for removal. What, if any, are the implications of these changes? Defendant, for its part, offers two arguments relating to plaintiff's amended complaint. First, it claims that plaintiff's first claim for relief still contains requests for relief triggering ERISA preemption. Assuming, arguendo, the Court rejects its first argument, defendant urges the Court to continue to exercise its supplemental jurisdiction over plaintiff's remaining state law claims. The Court addresses those arguments in turn.

**A.**

Plaintiff represents that the first claim for relief in his amended complaint seeks nothing more than the severance package promised in the Employment Agreement.[6]  He argues, again, that those termination benefits are not part of a "plan" subject to ERISA.

> An ERISA "plan" under 29 U.S.C. § 1002 exists
>
> if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and the procedures for receiving benefits. . . . Additionally, in order to fit within ERISA, the plan must implicate benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation.

Siemon v. AT&T Corp., 117 F.3d 1173, 1178 (10th Cir. 1997) (citing Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 11 (1987) (internal quotation marks omitted)).  The Supreme Court's opinion in Fort Halifax is the most common point of reference for courts seeking to determine whether an employer's promise to provide severance pay qualifies as a  pension plan under 29 U.S.C. § 1002. In Fort Halifax, the Supreme Court considered whether ERISA preempted a Maine statute requiring employers to provide a one-time severance payment to employees in the event of a plant closing. The Court determined that the fulfillment of Congress's purposes in crafting ERISA -- freeing employers from the burdens of dual regulatory regimes and protecting employees from employer misuse -- would require the coverage of only those plans embodying "a set of administrative

---

[6]    Defendant's response to plaintiff's motion to remand states, "What is unclear at this juncture, however, is whether Plaintiff intends to retain his claim for Defendant's stock under his theory of a phantom stock plan."  Defendant's Response and Objection to Plaintiff's Motion to Remand (Dkt. # 22), at 7.  In his reply in support of his motion to remand, plaintiff clarifies that he seeks severance benefits and has abandoned his claim for benefits under a phantom stock plan.  In addition, the language of plaintiff's amended complaint seeks compensation as provided under the Employment Agreement.  The phantom stock plan is not part of plaintiff's Employment Agreement with defendant.  The Court has determined, in any event, that the phantom stock plan does not qualify as a ERISA pension plan.

practices vulnerable to the burden that would be imposed by a patchwork scheme of regulation." 482 U.S. at 11-12. The Court concluded that the severance benefits guaranteed under the Maine statute constituted a one-time contingency that did not require the type of administrative framework at which Congress aimed ERISA's protections. Id. at 12.

In the wake of Fort Halifax, appellate courts have identified a variety of factors to be taken into account in determining whether a severance or retirement benefits package qualifies as a "plan" for the purposes of ERISA preemption, including: (1) whether defendant is to pay benefits as a one time, lump sum payment or as periodic payments, see Fontenot v. NL Indus., Inc., 953 F.2d 960, 962-63 (5th Cir. 1992) (holding severance agreement did not constitute a "plan" when agreement called for one-time, lump sum payment triggered by a single event); (2) whether the agreement permits the exercise of discretion by the employer in the determination and allocation of severance benefits, and, if so, how much, see O'Connor v. Commonwealth Gas Co., 251 F3d 262, 267 (1st Cir. 2000) ("Particularly germane to assessing an employer's obligations is the amount of discretion wielded in implementing them."); (3) whether the employer would be required to analyze separately the circumstances of each employee's termination in light of standards set by defendant, see Kulinski v. Medtronics Bio-Medicus, Inc., 21 F.3d 254, 257 (8th Cir. 1994) ("[A]n employer's need to create an administrative scheme may arise where the employer, to determine the employee's eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the appropriate criteria."); (4) and the certainty of an employer's obligation to pay severance benefits to an employee, see James v. Fleet/Norstar Fin. Group, Inc., 992 F.2d 463, 467 (2d Cir. 1993) ("In Fort Halifax, the Court stressed the contingent nature of the obligation the Maine statute

10

imposed: the payment requirement would arise only if the employer closed the plant."). Courts have

relied upon one or a combination of these factors, but have identified none as dispositive.

The applicable provisions of plaintiff's Employment Agreement provide, in pertinent part:

5.2     Payment Upon Termination.  Upon termination of employment, Thompson shall be entitled  to the following payments and no other:

(a) If Thompson's employment under this Employment Agreement is terminated pursuant to paragraph 5.1(1), 5.1(4), or 5.1(5), the Company shall make a lump sum cash payment to Thompson within ten (10) days after the effective date of the termination of an amount equal to (i) any unpaid Base Salary through the effective date of the termination, plus (ii) any unreimbursed expenses accruing to the date of termination, plus (iii) unused vacation earned on the effective date of termination.

(b) If Thompson's employment under this Employment Agreement is terminated pursuant to paragraphs 5.1 (2), the Company shall (i) make a lump sum cash payment to Thompson, or representative of his estate, within ten (10) days after the effective date of termination equal to one year's annual Base Salary, plus (ii) any unreimbursed expenses accruing to the date of termination, plus (iii) unused vacation earned on the effective date of termination.  At the option of the Company, the Base Salary due pursuant to this paragraph 5.2 (b) may be paid proportionally over 12 months.

(c) If Thompson's employment under this Employment Agreement is terminated pursuant to paragraph 5.1(3) or 5.1(6), the Company shall make a lump sum payment to Thompson within ten (10) days after the effective date of termination equal to (i) two times Thompson's annual Base Salary, plus (ii) the cost, as determined by the Company in its sole judgment, to Thompson to purchase his/her employee benefits all benefits [sic] afforded Thompson under this Employment Agreement, plus (iii) any unreimbursed expenses accruing to the date of termination, plus (iv) unused vacation earned on the date of termination.  At the option of the Company, the Base Salary due pursuant to this paragraph 5.2 (c) may be paid proportionally over 24 months.

Plaintiff's Amended Complaint (Dkt. # 13), Employment Agreement, ¶ 5.2.

Plaintiff's severance agreement with defendant includes elements both implicating and

rebutting ERISA preemption.  On the one hand, defendant may have required an administrative

program to implement those provisions requiring discretionary decisionmaking on the part of

11

defendant.  Paragraph 5.2 of the Employment Agreement, for example, sets out a detailed severance payment regime in which the nature of plaintiff's termination, whether "with cause" or "without cause," is crucial.  If plaintiff's termination occurred by "mutual agreement" or "with cause," for "willful and intentional breach of duty" of failure to pass a company drug test, for instance, defendant's severance obligation is limited to a lump sum payment including any unpaid salary through the effective date of termination, any unreimbursed expenses accruing to the date of termination, and unused vacation earned up to the effective date of termination.  Id. at ¶ 5.2 (a).  If, in contrast, defendant chose to terminate plaintiff without cause, he would be due, inter alia, slightly more than $400,000 in salary compensation.  Id. at ¶ 5.2(c)(i).  Presumably, someone in defendant's employ would be necessary to determine the type of termination and handle disputes in the event plaintiff objected to that determination.  See Emmenegger, 197 F.3d at 935 (concluding that severance agreement constituted plan under ERISA when plan required ad hoc judgment about the reason for the employee's termination and for employer to evaluate the quality of that person's service to employer);  Simas v. Quaker Fabric Corp. of Fall River, 6 F.3d 849, 853 (1st Cir. 1993) ("The 'for cause' determination, in particular, is likely to provoke controversy and call for judgments based on information well beyond the employee's date of hiring and termination.").

Paragraph 5.2(c) assigns further discretion to defendant, directing payment of the cost  "as determined by the Company in its sole judgment," to plaintiff to purchase the employee benefits provided under the Employment Agreement.   Plaintiff's Amended Complaint (Dkt. # 13), Employment Agreement, ¶ 5.2(c)(ii).  Finally, the "without cause" severance provisions permit defendant, at its option, to pay the owed severance benefits to plaintiff proportionally over the course of twenty four months, not as a one-time, lump sum.  Id. at ¶ 5.2.

The severance benefits provided under the Employment Agreement are not, however, part of a larger executive compensation package covering multiple employees, as is the situation in nearly all of the cases confronting whether a given plan qualifies under ERISA treatment. Based on the Court record, plaintiff is the only employee subject to this severance agreement. It is much more difficult to conceive of the creation of an "ongoing administrative program," <u>Fort Halifax</u>, 482 U.S. at 12, for the management of a severance agreement covering one employee. Nor would it seem that such a program would be necessary for the "theoretical possibility," <u>id.</u>, of plaintiff's premature departure during the course of a lengthy working relationship. Finally, while some of the severance provisions permit the payment of plaintiff's benefits over a one or two year period, the amount per month could be easily determined without the need for a separate administrative program to regulate the distribution of the payments. <u>See</u> <u>Herring v. Oak Park Bank</u>, 963 F. Supp. 1558, 1566 (D. Kan. 1997) ("Courts have concluded that an ERISA 'plan' is not created simply because the payment to the employee of a determined amount may be paid out in installments.").

The severance agreement at issue does not support unequivocally a preemption conclusion. The Court returns, then, to the touchstone articulated in <u>Fort Halifax</u>, that is, whether the promised benefits package requires "an ongoing administrative program for processing claims and paying benefits." 482 U.S. at 12. Plaintiff's severance agreement required payment by defendant of an easily calculable amount over no more than two years to one employee. That payment obligation would arise only in the event that plaintiff's employment ended before the date prescribed by the Employment Agreement. The Court concludes that the severance arrangement did not require the development and maintenance by defendant of an administrative framework to discharge its

responsibilities under the Employment Agreement. The severance scheme outlined in plaintiff's Employment Agreement does not, therefore, constitute an ERISA "plan."[7]

## B.

The result of the foregoing analysis is that the claims in plaintiff's amended complaint do not implicate federal law.  Because the Court had subject matter jurisdiction over this entire action at the time of removal, it may, as defendant urges, continue to exercise supplemental jurisdiction over the remaining claims.  Giles, 172 F.3d at 337 ("Once the court has proper removal jurisdiction over a federal claim, it may exercise supplemental jurisdiction over state law claims as well . . . even if it dismisses or otherwise disposes of the federal claim or claims."); New Mexico v. General Elec. Co., 335 F. Supp. 2d 1157, 1175 (D.N.M. 2003) ("[W]here state law claims are removed to federal court, the presence of federal claims or federal defendants provides the basis for supplemental jurisdiction over state law claims which were plainly part of the same controversy.  And when the federal claims or federal defendants are dropped from the case, the district court still ha[s] power under 28 U.S.C. § 1367  to exercise supplemental jurisdiction.").

The Court, nevertheless, declines to exercise its supplemental jurisdiction.  Plaintiff's amended complaint no longer seeks relief under an ERISA-qualified plan, and all that remain are state law claims.  The Court is mindful of the need to maintain appropriate regard for the state

---

[7]    Plaintiff's amended complaint seeks "additional compensation as set forth in the employment contract."  Plaintiff's Amended Complaint (Dkt. #13). The only other section in the Employment Agreement referencing benefits of any kind reads, "Benefits: Thompson shall receive such employee benefits and perquisites that generally are made available from time to time to the SMT [Senior Management Team] members."  Plaintiff's Amended Complaint (Dkt. # 13), Employment Agreement, at 1.  Neither party has provided the Court with any information regarding those benefits, and there is no suggestion that they are part of benefit plans covered by ERISA.

14

courts' ability to adjudicate claims brought pursuant to state law.  Moreover, although this matter has been pending for some time, there is not yet a scheduling order and no suggestion that the parties have committed significant resources to discovery, the drafting of dispositive motions, or preparation for trial.

Defendant argues that plaintiff's amendment constitutes an attempt to manipulate the Court's jurisdiction, and that the Court should retain jurisdiction as a punitive measure.  While this is a permissible ground on which a court may deny a motion to remand, it is not sufficient, standing alone, to justify retention of a matter in which there is no longer any federal question for consideration.  See Certilman v. Becker, 807 F. Supp. 307, 310  (S.D.N.Y. 1992) (observing that federal courts' traditional aversion to forum-shopping is not substantially implicated where "pleadings were amended early in the litigation with no prejudice to defendants, and a remand to state court would merely effectuate plaintiffs' original choice of a state forum").[8]

---

[8]    The Court is not insensitive to defendant's concerns that plaintiff may attempt, upon remand, to seek relief under an ERISA benefit plan.  First, such an attempt may be subject to principles of estoppel.  Second, plaintiff is advised that, absent estoppel, defendant might remove again upon receipt of any pleading or motion "from which it may be ascertained that the case is one which is or has become removable," 28 U.S.C. § 1446(b), and plaintiff might be ordered to pay the fees associated with this remand and/or a second removal.

IV.

**IT IS THEREFORE ORDERED** that plaintiff's motion to remand (Dkt. # 15) is hereby

**granted**.  The Court Clerk is directed to **remand this case to the District Court in and for Tulsa**

**County, State of Oklahoma**.


**DATED** this 20th day of March, 2006.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

16